# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RICKY L. WILLIAMS,**
               **Plaintiff,**

      **v.**                                 **Case No. 07-CV-01158**

**BONNIE LAMB, NICOLE VARLEY,**
**TOM LANGENHORST, WAYNE**
**STARBIRD, CALEB HAWLEY,**
**SARAH BOWE, and SANDY BEULEN,**
               **Defendants.**

---

## DECISION AND ORDER

Plaintiff Ricky L. Williams filed a pro se civil rights complaint under 42 U.S.C. §
1983. He was allowed to proceed on an Eighth Amendment medical care claim against
defendants, correctional officers at Dodge Correctional Institution ("DCI") in Waupun,
Wisconsin. Before me now are defendants' motion for summary judgment and plaintiff's
cross-motion for summary judgment.

## I. LEGAL STANDARD

Summary judgment is appropriate where, viewing the record in the light most
favorable to the non-moving party, the movant demonstrates that there is no genuine issue
of material fact and that movant is entitled to judgment as a matter of law. Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). A party is entitled
to judgment as a matter of law where no reasonable jury could return a verdict for the
adverse party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).

## II. BACKGROUND[1]

In January 2007, when the events leading to this lawsuit occurred, plaintiff was a resident at DCI, and he alleges that defendants were deliberately indifferent to his medical needs during their shifts at DCI between January 19th and 25th, in violation of the Eighth Amendment. He claims they ignored his repeated complaints that one of his medications was missing and failed to respond appropriately to his worsening physical state when he began to experience withdrawal symptoms.

During 2007, correctional officers at DCI distributed medication to inmates under the supervision of the prison health care staff. Medications were kept in a locked control center and were distributed during scheduled times of the day. Officers distributed medications based on each prisoner's Medication Administration Record ("MAR"). Officers were only permitted to dispense medications when authorized by a prescription from a prison physician, and they were not authorized to discontinue any prisoner's medications. Officers made a note on the MAR as they dispensed each listed medication. They also made notes about their routine activities and any unusual events that took place during their shifts in the unit log book.

On Friday, January 19th, defendants stopped giving plaintiff doses of an anxiety medication called alprazolam because, as plaintiff concedes, his prescription had been completed. (Pl.'s Br. in Supp. of Mot. for Summ. J. at 1). When plaintiff noticed that he was not receiving this drug, he began complaining to the guards about his "missing medication,"

---

[1] The facts in this section are taken from plaintiff's verified complaint and attached exhibits, plaintiff's affidavit and verified cross-motion, and defendants' proposed findings of fact and attached affidavits. See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996).

2

and he avers that defendants failed to respond to his requests for help. (Aff. of Ricky L. Williams at 1–2.) Among other things, they failed to write up an incident report. However, since none of plaintiff's prescribed medicines were in fact missing, no incident report was required. Instead, the standard practice for a completed prescription was to have the inmate send a written request to the Health Services Unit ("HSU"). The record indicates that plaintiff sent such a request to the HSU on January 19th, 22nd and 24th. (Second Aff. of Beth Dittman ¶ 16.) In response, plaintiff was seen by several nurses and doctors at the prison, and his prescription for alprazolam was reinstated by his psychiatrist on January 25th.

According to plaintiff, the first officer he complained to was defendant Lamb. On January 19th and 20th, defendant Lamb was on duty during the first shift from 6:00 a.m. to 2:00 p.m. She does not recall plaintiff reporting that any of his medications had run out or were missing, and plaintiff's MAR indicates that plaintiff received all of his prescribed medications during Lamb's shifts. Yet, plaintiff avers that on January 19th he began feeling pain in his chest and stomach, his face began to feel hot, and he had trouble breathing, and he further avers that defendant Lamb told him he would have to wait until Monday to speak with a doctor about his missing medication. Lamb concedes this was her usual practice when a prescription ran out on a weekend.

Plaintiff then complained to defendant Varley, who was on duty on January 19th from 2:00 p.m. to 10:00 p.m. as a second shift officer. Varley noted plaintiff's complaints about "not getting meds" in the unit log book, but prison records indicate that Varley too distributed all medications listed on the MAR. (Aff. of Nicole Varley ¶ 15.) Defendants Langenhorst and Starbird worked the second and third shifts respectively on January 20th.

3

The third shift runs overnight from 10:00 p.m. to 6:00 a.m. The MAR indicates that they dispensed all of plaintiff's prescribed medications, and neither of these officers made any notes in the log regarding plaintiff's complaints.

Defendant Hawley was on duty during the first shift on January 21st. Plaintiff avers that he did not receive any medication from defendant Hawley on that day, and that he told Hawley he needed his medicine. The MAR, however, indicates that Hawley dispensed 5 milligrams of busiprone to plaintiff in the morning. After that, the HSU ran out of busiprone, so plaintiff did not receive his noon or evening doses. Prison health care officials were aware that his busiprone had run out, and there was a note saying the medication would be refilled "when available." (Aff. of Caleb Hawley ¶ 8.) Other than this, Hawley does not recall plaintiff having any problems. Defendant Langenhorst then returned to work the second shift on January 21st. It is unclear whether defendant Hawley or Langenhorst called the HSU on plaintiff's behalf, but prison records indicate, and plaintiff avers, that he was seen by prison medical staff at 2:30 p.m. on January 21st. At that time, the nurse administered medication and scheduled an appointment for plaintiff to see the doctor on the following day, January 22nd.

A few days later, defendants Beulen and Bowe were on duty during the third shift starting on January 24th and running until 6:00 a.m. on January 25th. According to an incident report filed by defendant Bowe that night, plaintiff began complaining of chest and testicular pain. Plaintiff avers that he told defendant Bowe around midnight that he was having a heart attack, and that defendant Bowe then waited between 30 and 60 minutes to call the HSU. Prison records indicate that at 1:10 a.m. on January 25th, defendant Bowe called a nurse to assist plaintiff. The nurse diagnosed plaintiff as suffering from an anxiety

4

attack and administered medicine. At 5 a.m. that morning, plaintiff again complained of pain, and the nurse brought more medication to plaintiff. She told defendants Bowe and Beulen that psychological services staff would see plaintiff later that day. Plaintiff agrees that he saw the nurse twice that evening, and that the following day he was taken to an appointment with a doctor. For purposes of this motion only, the defendants stipulate that plaintiff's pain problems on January 24th and 25th constituted a serious medical need.

### III. DISCUSSION

Defendants argue that plaintiff cannot establish that they were deliberately indifferent to his medical needs. They also contend that plaintiff's state law negligence claims should be dismissed because: (1) plaintiff has failed to comply with Wisconsin's notice of claim statute, and (2) no reasonable jury could find that any of the defendants were negligent toward plaintiff.

**A.    Eighth Amendment Claims**

The Eighth Amendment bans cruel and unusual punishment and is applicable to the states through the due process clause of the Fourteenth Amendment. See, e.g., Robinson v. California, 370 U.S. 660, 666 (1962). To make out an Eighth Amendment claim based on inadequate medical care, plaintiff must show that defendants were deliberately indifferent to his serious medical needs. See Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007). A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Plaintiff must show first that he actually suffered from a serious medical condition that was either diagnosed by a doctor as mandating treatment or was so obvious that even a lay

5

person would know it required a doctor. <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005). Second, plaintiff must show that defendant prison officials actually knew there was a substantial risk of harm to plaintiff and disregarded that risk. <u>Farmer</u>, 511 U.S. at 834.

Examining the facts in the light most favorable to the plaintiff, plaintiff has not presented sufficient evidence to meet either the objective or subjective component of this test with respect to defendants' actions on January 19th, 20th and 21st. The facts indicate that plaintiff stopped taking alprazolam, an anxiety medicine, and that he began to experience increased anxiety and withdrawal as a result. However, beyond his own description of his discomfort, plaintiff has not presented evidence that would lead a reasonable lay person to conclude that plaintiff required immediate medical attention beyond what he received. In fact, the nurse who examined plaintiff on the afternoon of January 21st felt plaintiff could wait another day before seeing a doctor. There are also no facts in the record to indicate that defendants recognized a risk to plaintiff's health and disregarded that risk. Defendants gave plaintiff all of his prescribed medications and had no reason to believe from his chart that he needed more alprazolam. When his physical symptoms worsened, defendants called in medical staff to assist him. They also allowed him to send requests directly to the HSU, which plaintiff chose to do at least three times.

Defendants have stipulated that plaintiff suffered from an objectively serious medical condition on the night of January 24th and morning of the 25th. This satisfies the objective component of the test for liability on these days, but plaintiff has not presented any evidence indicating that defendants acted with reckless disregard as to plaintiff's health. Plaintiff avers that he told defendant Bowe that he thought he was having a heart attack around midnight, and that she waited 30 to 60 minutes to call a nurse. Prison records

6

indicate she called around 1:10 a.m. A nurse then arrived shortly thereafter to treat him, and defendant Bowe filed an incident report documenting plaintiff's illness. If defendant Bowe truly believed that plaintiff was having a heart attack, then the delay in calling the nurse might seem unreasonable. However, there is no evidence that Bowe believed it was a heart attack, and, in fact, the nurse diagnosed plaintiff as having an anxiety attack. Based on the undisputed facts, then, a reasonable jury could not conclude that defendants acted with deliberate indifference.

## B.    State Law Negligence Claim

In his complaint, plaintiff alleges that defendants are also liable for negligence under Wisconsin state law. I have decided to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Defendants ask that these claims be dismissed because the undisputed facts demonstrate that: 1) plaintiff failed to comply with the State's notice of claim statute, Wis. Stat. § 893.82; and (2) no reasonable jury could find that any of the defendants were negligent in performing the duties they owed to plaintiff.

Under Wis. Stat. § 893.82, plaintiff must file notice of a claim against a state officer, employee, or agent with the Attorney General within 120 days of the event that caused plaintiff's injury. The notice of claim must state the names of the state official who harmed plaintiff. Id. The Wisconsin Court of Appeals has held that a notice of claim which identifies the negligent party by job title and not by name does not comply with the requirements of the statute. Modica v. Verhulst, 195 Wis. 2d 633, 647 (Wis. Ct. App. 1995). The notice of claim filed by plaintiff identified four individuals as "c/os" (presumably referring to correctional officers), but the names he provided for these individuals only match up with two of the defendants. He identified "c/o Lam–Unit 22/DCI" and "c/o Langenhorst–Unit

7

22/DCI." (Aff. of Betty Kruse Ex. A.) The other correctional officers identified are someone named "Kruger" and someone called "grandma" or "Miss G." Id. Therefore, looking at the facts in the light most favorable to plaintiff, his state law negligence claims fail for lack of notice with respect to all but two of the defendants, Lamb and Langenhorst.

There is no evidence that defendant Lamb or Langenhorst was negligent in performing duties owed to plaintiff. Under Wisconsin state law, a defendant is not negligent as a matter of law where "no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care." Behrendt v. Gulf Underwriters Ins. Co., 318 Wis. 2d 622, 638–39 (2009). Here, there is no evidence that either defendant failed to deliver plaintiff's prescribed medication or to call a doctor when presented with an urgent medical need. There is also no evidence that they failed to respond when his alprazolam went missing; instead, the record establishes that his prescription had been completed by January 19th and that he was allowed to contact the HSU about the completed prescription. No reasonable jury could conclude that defendant Lamb or Langenhorst acted negligently in failing to take further action.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED**, and plaintiff's cross-motion for summary judgment is **DENIED**.

Dated at Milwaukee, Wisconsin, this 26th day of September 2011.

s/_____
LYNN ADELMAN
District Judge

8